# In the United States Court of Federal Claims

No. 12-322 L

(E-Filed: December 21, 2012)

|  |  |
|---|---|
| JEANETTE D. ANDREWS, | ) |
| | ) |
| Plaintiff, | ) RCFC 12(b)(6) Motion to Dismiss; |
| | ) Fifth Amendment Takings Claim; |
| v. | ) Inverse Condemnation; Avigation |
| | ) Easement; Overflight Taking; |
| THE UNITED STATES, | ) Time of Accrual of Claim |
| | ) |
| Defendant. | ) |

Henry E. Howell, III, Norfolk, VA, for plaintiff.

Joshua A. Doan and Charlotte M. Youngblood, with whom was Ignacia S. Moreno, Assistant Attorney General, Environment & Natural Resources Division, United States Department of Justice, Washington, DC, for defendant. Robert J. Smith, Navy Litigation Office, Washington, DC, of counsel.

OPINION AND ORDER

HEWITT, Chief Judge

Jeanette D. Andrews (plaintiff), a Virginia property owner, brings this suit against the United States, acting through the United States Department of Defense, Department of the Navy (Navy or defendant), in which she alleges that flights over and around her property by Navy fighter jets constitute an inverse condemnation and entitle her to just compensation. Compl. for Inverse Condemnation (Complaint or Compl.), Docket Number (Dkt. No.) 1, ¶¶ II, 1-2, 5, 19-21.[1] Defendant moves to dismiss plaintiff's

---

[1] Plaintiff's Complaint for Inverse Condemnation (Complaint or Compl.), Docket Number (Dkt. No.) 1, is organized into five sections, designated I-V. The majority of the Complaint is contained in section V, the content of which is subdivided into numbered paragraphs 1-22. None of the other sections I-IV contains subsections, and each consists only of a single paragraph. The court cites to each of paragraphs I-IV by their Roman numerals, and to each of paragraphs 1-22 (within section V) by their respective Arabic numerals only.

Complaint for failure to state a claim upon which relief can be granted, pursuant to Rule 12(b)(6) of the Rules of the United States Court of Federal Claims (RCFC).

Before the court, in addition to plaintiff's Complaint, are: United States' Motion to Dismiss for Failure to State a Claim Upon Which Relief Can Be Granted and Memorandum in Support (defendant's Motion or Def.'s Mot.), Dkt. No. 5, filed July 19, 2012; Plaintiff's Memorandum in Opposition to the Motion to Dismiss (plaintiff's Response or Pl.'s Resp.), Dkt. No. 8, filed October 1, 2012; and United States' Reply in Support of Motion to Dismiss for Failure to State a Claim Upon Which Relief Can Be Granted (defendant's Reply or Def.'s Reply), Dkt. No. 9, filed October 18, 2012.

For the reasons stated below, defendant's Motion is GRANTED.

I.   Background

Defendant operates F/A-18 E/F fighter jets (Super Hornets) from Naval Station Oceana (Oceana) in Virginia Beach, Virginia and from Naval Auxiliary Landing Field Fentress (Fentress) in Chesapeake, Virginia. Compl. ¶¶ 2-4; see Def.'s Mot. 1-2. Super Hornets were first stationed at Oceana beginning in 2003, and, in 2009, full deployment of Super Hornets to Oceana was complete. Compl. ¶ 16; see Def.'s Mot. 2; see also Compl. ¶ 15 ("On September 4, 2003, the Acting Secretary of the Navy issued the Record of Decision . . . [that would] base[] 8 squadrons [of Super Hornets] and the [First Replacement Squadron] [at] . . . Oceana."). Fentress airfield has served as the primary training ground for the Super Hornets stationed at Oceana. See Compl. ¶ 4; Def.'s Mot. 2. The Super Hornets produce "significantly higher levels of noise and vibration" than the F-14 and F/A-18 C/D aircraft that they replaced. Compl. ¶ 18; see Def.'s Mot. 2.

On May 23, 2006 plaintiff acquired property at 2421 and 2433 Blue Ridge Road in Chesapeake, Virginia (the Property). Compl. ¶ 1; see Def.'s Mot. 1-2. Because flight paths at Oceana and Fentress "intermittently carry the [Super Hornets] over and in close proximity to the Property," the Property has been designated "'in field'" of the operations at Oceana and Fentress. See Compl. ¶¶ 11, 17; Def.'s Mot. 2-3. Plaintiff alleges that noise and vibrations from the Super Hornets flying "directly over and in close proximity to the Property has substantially interfered with Plaintiff's use and enjoyment of the Property and has diminished the market value of the Property." See Compl. ¶ 19 (mentioning only noise and not vibrations); Def.'s Mot. 2-3; Pl.'s Resp. 1 ("The Super Hornet overflights produced noise and vibrations that interfered with [plaintiff's] use and enjoyment of property[] [and] lowered the market value of her property. . . .").

II.   Legal Standards

   A.   Jurisdiction

2

A court must determine at the outset of a case whether it has subject matter jurisdiction over the claims before it. See Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 94-95 (1998); PODS, Inc. v. Porta Stor, Inc., 484 F.3d 1359, 1365 (Fed. Cir. 2007). If the court determines that it does not have jurisdiction over a claim, the claim must be dismissed. See RCFC 12(h)(3). The burden is on the plaintiff to show jurisdiction by a preponderance of the evidence. Taylor v. United States, 303 F.3d 1357, 1359 (Fed. Cir. 2002).

The United States Court of Federal Claims (Court of Federal Claims) is a court of limited jurisdiction that, pursuant to the Tucker Act, may hear "any claim against the United States founded . . . upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States." 28 U.S.C. § 1491(a) (2006). The Tucker Act serves as a waiver of sovereign immunity and a jurisdictional grant, but it does not create a substantive cause of action. Jan's Helicopter Serv., Inc. v. Fed. Aviation Admin., 525 F.3d 1299, 1306 (Fed. Cir. 2008). A plaintiff must, therefore, satisfy the court that "'a separate source of substantive law . . . creates the right to money damages.'" Id. (quoting Fisher v. United States, 402 F.3d 1167, 1172 (Fed. Cir. 2005) (en banc in relevant part)). The Takings Clause of the Fifth Amendment is such a money-mandating source. Id. at 1309; see Moden v. United States, 404 F.3d 1335, 1341 (Fed. Cir. 2005) ("[T]o the extent the [plaintiffs] have a nonfrivolous takings claim founded upon the Fifth Amendment, jurisdiction under the Tucker Act is proper.")

The court's six-year statute of limitations, a condition on the Tucker Act's waiver of sovereign immunity, further limits the court's jurisdiction. Martinez v. United States, 333 F.3d 1295, 1316 (Fed. Cir. 2003) (en banc); see Soriano v. United States, 352 U.S. 270, 276 (1957). The statute of limitations provides that claims over which the Court of Federal Claims would otherwise have jurisdiction "shall be barred unless the petition thereon is filed within six years after such claim first accrues." 28 U.S.C. § 2501 (2006). Because the statute of limitations in this court is jurisdictional, Martinez, 333 F.3d at 1316, it cannot be waived, see John R. Sand & Gravel Co. v. United States, 552 U.S. 130, 134-35 (2008) (noting the "absolute nature" of the "jurisdictional" limitations statute for this court).

    B.    Failure to State a Claim

A motion to dismiss pursuant to RCFC 12(b)(6)[2] asserts a "failure to state a claim upon which relief can be granted." RCFC 12(b)(6). To survive a Rule 12(b)(6) motion,

---

[2] The Rules of the United States Court of Federal Claims (RCFC) generally mirror the Federal Rules of Civil Procedure (FRCP). See RCFC 2002 Rules Committee Note ("[I]nterpretation of the court's rules will be guided by case law and the Advisory Committee Notes that accompany the Federal Rules of Civil Procedure."). Rule 12 of the RCFC is

"a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal (Iqbal), 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly (Twombly), 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Id. (citing Twombly, 550 U.S. at 556).  This means that the complaint must "raise a right to relief above the speculative level."  See Twombly, 550 U.S. at 555.  "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Iqbal, 556 U.S. at 678; accord Twombly, 550 U.S. at 555 ("While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.") (brackets, internal quotation marks and citations omitted).

When ruling on a Rule 12(b)(6) motion to dismiss, the court "must accept as true all the factual allegations in the complaint" and must make "all reasonable inferences in favor of the non-movant."  Sommers Oil Co. v. United States (Sommers Oil), 241 F.3d 1375, 1378 (Fed.Cir. 2001); accord Hornback v. United States, 601 F.3d 1382, 1384 (Fed. Cir. 2010).  The court may not "choose among competing inferences as long as there are sufficient facts alleged to render the non-movant's asserted inferences plausible."  In re Bill of Lading Transmission & Processing Sys. Patent Litig. (Bill of Lading), 681 F.3d 1323, 1340 (Fed. Cir. 2012).  Nonetheless, the court is "not bound to accept as true a legal conclusion couched as a factual allegation."  Papasan v. Allain, 478 U.S. 265, 286 (1986); see Twombly, 550 U.S. at 555.

    C.    Inverse Condemnation:  Avigation Easements

    1.    Standard for Cause of Action

The Fifth Amendment protects owners of private property from having their property taken by the federal government without just compensation.  U.S. Const. amend. V.  Inverse condemnation "is a cause of action against the government to recover the value of property taken by the government without formal exercise of the power of eminent domain."  Moden, 404 F.3d at 1342 (citing United States v. Clarke, 445 U.S. 253, 257 (1980)).  To state a claim for inverse condemnation, a plaintiff must show:  (1) that under the circumstances, treatment under takings law, as distinguished from tort law, is appropriate and (2) "that it possessed a protectable property interest in what it alleges the government has taken."  Ridge Line, Inc. v. United States (Ridge Line), 346 F.3d 1346, 1355 (Fed. Cir. 2003).

---

substantially identical to Rule 12 of the FRCP.  Compare RCFC 12, with FRCP 12.  Therefore, the court relies on cases interpreting FRCP 12 as well as those interpreting RCFC 12.

The United States Supreme Court (Supreme Court) has concluded that treatment under takings law is appropriate as to government operation of aircraft when "[f]lights over private land . . . are so low and so frequent as to be a direct and immediate interference with the enjoyment and use of the land."[3] United States v. Causby, 328 U.S. 256, 266 (1946); e.g., Griggs v. Allegheny Cnty., 369 U.S. 84, 87-90 (1962) (finding a taking when "regular and almost continuous daily flights . . . directly over and very, very close to [the] plaintiff's residence" made conversations and sleep in the residence difficult, rattled windows, caused plaster to fall from walls and ceilings, and negatively impacted residents' health). The United States Court of Appeals for the Federal Circuit (Federal Circuit) has derived from Causby three factors for consideration "in determining whether noise and other effects from overflights . . . constitute a taking": (i) whether the planes flew directly over the plaintiff's land; (ii) the altitude[4] and frequency of the flights;

---

[3] Takings based on aircraft flight can be described as "easements of flight," "avigation easements" or "overflight takings." See, e.g., United States v. Causby, 328 U.S. 256, 261 (1946) (using "easement of flight"); Argent v. United States, 124 F.3d 1277, 1278, 1281 (Fed. Cir. 1997) (using "avigation easements" at the first pincite and "overflight takings" at the second); Brown v. United States, 73 F.3d 1100, 1102 (Fed. Cir. 1996) (using "avigation easement").

[4] The finding by the United States Supreme Court (Supreme Court) of a taking in Causby was based, at least in part, on the Court's holding that "the path of the glide or flight for landing or taking off was not the downward reach of the 'navigable airspace.'" See Griggs v. Allegheny Cnty., 369 U.S. 84, 88 (1962) (citing Causby, 328 U.S. at 264) (describing the decision of the Court in Causby). In other words, the Supreme Court found a taking in Causby when the portions of the flight paths at issue were outside the "navigable airspace," that is, the airspace above certain altitudes that Congress had placed within the public domain. Following the Court's decision in Causby, Congress "redefined 'navigable airspace' to mean airspace above the minimum altitudes of flight prescribed by regulations . . . and . . . includ[ing] airspace needed to insure safety in take-off and landing of aircraft." Id. at 88 (internal quotation marks omitted) (emphasis added).

Notwithstanding Congress's change to the definition of "navigable airspace," the Supreme Court held in Griggs that a taking had occurred on facts similar to those in Causby even though the portions of the flight paths at issue in Griggs, the glide-paths for take-off and landing, had been brought within the navigable airspace by Congress's new definition. See id. at 90; see also Argent, 124 F.3d at 1281 (describing history of Causby and Griggs); Branning v. United States, 228 Ct. Cl. 240, 253-56, 654 F.2d 88, 97-98 (1981) (per curiam) (same) (reprinting trial judge's report as modified), recons. denied as to relevant portion, 784 F.2d 361 (Fed. Cir. 1986).

Despite this precedent for finding that a taking could occur within navigable airspace, courts have continued to apply a rule that certain flights within navigable airspace (because they are above the minimum altitudes of flight prescribed by the regulations)--that is, flights above 500 feet for noncongested areas and 1000 feet for congested areas--do not constitute a taking. See Argent, 124 F.3d at 1281 (citing, inter alia, Lacey v. United States, 219 Ct. Cl. 551, 554, 595 F.2d 614, 616 (1979) (per curiam) (applying 500-foot rule)); see, e.g., Persyn v. United States, 34 Fed. Cl. 187, 195 (1995) ("Airspace above 1,000 feet in the congested areas of cities, towns

5

and (iii) whether the flights directly and immediately interfered with the plaintiff's enjoyment and use of the land. Brown v. United States, 73 F.3d 1100, 1102 (Fed. Cir. 1996). Such claims have been analyzed pursuant to a physical takings framework. See Causby, 328 U.S. at 265 (stating that invasions of the airspace over a plaintiff's property are "in the same category as invasions of the surface"); Brown, 73 F.3d at 1102.

With respect to the first factor of whether flights were directly over a plaintiff's land, even when all or most of the flights on which a plaintiff bases a takings claim did not pass directly over the plaintiff's property, "the law is flexible enough to recognize non-invasive Governmental action that nonetheless threatens to destroy the owner's enjoyment of his estate." Argent v. United States, 124 F.3d 1277, 1283 (Fed. Cir. 1997). Thus, where a plaintiff complains of a "peculiarly burdensome pattern of activity, including both intrusive and non-intrusive flights, that significantly impairs [her] use and enjoyment of [her] land, [that plaintiff] may state a cause of action." Id. at 1284 (citing, inter alia, Griggs, 369 U.S. at 87, Branning v. United States, 228 Ct. Cl.[5] 240, 242, 654 F.2d 88, 90 (1981) (per curiam), recons. denied as to relevant portion, 784 F.2d 361 (Fed. Cir. 1986)). However, "[w]here a plaintiff complains only of noise resulting from normal aircraft operations, not passing directly overhead," the plaintiff is not entitled to recovery. Id. (citing, inter alia, Richards v. Wash. Terminal Co., 233 U.S. 546, 554 (1914) (stating that, absent physical invasion, a plaintiff cannot recover damages on the basis of "noises and vibrations incident to the running of trains, the necessary emission of smoke and sparks from the locomotives, and similar annoyances inseparable from the normal and non-negligent operation of a railroad")).

Relevant to the second factor concerning altitude and frequency, where a takings claim is based on noise, "the court may consider the altitude of the flights over the property, but must give primary consideration to the effect of aircraft noise." Branning,

---

or villages, and 500 feet in uncongested areas, is navigable, or public, airspace, and the owner of subadjacent land has no claim for compensation for its use." (internal citations omitted)), aff'd on other grounds, 106 F.3d 424 (Fed. Cir. 1996). But see Branning, 228 Ct. Cl. at 242, 654 F.2d at 90 ("The novelty of this decision is in its holding that defendant's use of airspace at altitudes above 500 feet, and independent of landing and takeoff, may be a taking of land beneath if the use is peculiarly burdensome."); Stephens v. United States, 11 Cl. Ct. 352, 362 (1986) ("The court finds that the most appropriate rule is that when overflights occur in navigable airspace, a presumption of non-taking exists which can be overcome by proof of destruction of, or substantial impairment to the property. As the height of overflights increases, however, the Government's interest in maintaining air sovereignty becomes weightier while the landowner's interest diminishes . . . .").

[5] The United States Court of Claims (Court of Claims) is the predecessor court to this court and a predecessor to the United States Court of Appeals for the Federal Circuit. When acting in its appellate capacity, the Court of Claims created precedent that is binding on this court. See South Corp. v. United States, 690 F.2d 1368, 1369 (Fed. Cir. 1982) (en banc).

228 Ct. Cl. at 262, 654 F.2d at 102 (reprinting trial judge's report as modified (citing Aaron v. United States, 160 Ct. Cl. 295, 301, 311 F.2d 784, 801 (1963))). This is because "[m]inimum safe altitude and minimum noise levels are concerned with two different things. While safety may be measured in terms of altitude, a reasonable noise level cannot be measured solely in terms of altitude." Id. at 261-62, 654 F.2d at 101-02.

Finally, with respect to the third factor of whether flights directly and immediately interfered with a plaintiff's use and enjoyment of her land, "[t]o the extent that frequent and low overflights, through noise, vibrations, fumes, and so forth, have directly and substantially impaired the use of the [plaintiff's] property, for recreational [use] or other uses to which the land could readily be converted, there has been substantial interference with enjoyment of the property." Brown, 73 F.3d at 1104-05 (internal citation and quotation marks omitted). In other words, interference with potential future uses of the property, including recreational uses, may also constitute grounds for a taking.

    2.    Time of Accrual

A takings claim based on the Fifth Amendment "accrues when the act that constitutes the taking occurs." Ingrum v. United States, 560 F.3d 1311, 1314 (Fed. Cir. 2009); see also Hopland Band of Pomo Indians v. United States, 855 F.2d 1573, 1577 (Fed. Cir. 1988) ("[F]or the purposes of [the statute of limitations in this court], it would appear . . . accurate to state that a cause of action against the government has 'first accrued' only when all the events which fix the government's alleged liability have occurred and the plaintiff was or should have been aware of their existence."). More specifically, "'[t]he [physical] taking of an avigation easement by the Government occurs when the Government begins to operate aircraft regularly and frequently over a parcel of land at low altitudes, with the intention of continuing such flights indefinitely.'" Argent, 124 F.3d at 1285 (quoting Lacey v. United States, 219 Ct. Cl. 551, 559, 595 F.2d 614, 618 (1979) (per curiam)). A plaintiff has "six years from the moment that an action accrues to file [a] claim[]; otherwise [the plaintiff is] barred from litigating [such a] claim[] by the statute of limitations." Banks v. United States (Banks I), 76 Fed. Cl. 686, 691 (2007).

A separate cause of action with its own limitations period may accrue when the government, for example, increases the number of flights or introduces louder aircraft so as to "sufficiently increase[] the scope" of the original easement. Argent, 124 F.3d at 1285-86 (citing Avery v. United States, 165 Ct. Cl. 357, 362, 330 F.2d 640, 643 (1964) and Lacey, 219 Ct. Cl. at 559, 595 F.2d at 619); see Branning, 228 Ct. Cl. at 259, 654 F.2d at 100 (reprinting the trial judge's report as modified ("Although the bare presence of noise, without penetration of the superjacent airspace, cannot itself amount to a taking, an increase in noise alone, without any change in the nature of the physical invasion, has been held to constitute a further taking.")). The question of when such a separate cause of action accrues "is a factual matter that depends on . . . "when [an] alleged increase in

7

flights [or] noise occurred." Argent, 124 F.3d at 1287; see also Banks I, 76 Fed. Cl. at 694 n.5 ("In a physical taking, . . . the determinative issue is whether--and in the accrual context, when--the property was physically invaded (citing Loretto v. Teleprompter Manhattan CATV Corp., 458 U.S. 419, 432 (1982)).

When a taking occurs gradually over a prolonged period through a process of physical events, a plaintiff's claim accrues when the situation is stabilized, meaning at the time "when it becomes clear that the gradual process set into motion by the government has effected a permanent taking, not when the process has ceased or when the entire extent of the damage is determined." Boling v. United States, 220 F.3d 1365, 1370-71 (Fed. Cir. 2000). To the extent that a taking of an avigation easement could occur gradually, "[t]he overwhelming weight of authority holds that . . . the extent of the invasion and the degree of interference is ascertainable when the United States begins to operate its aircraft at low elevations and with such frequency that they substantially interfere with the use and enjoyment of the land, with the intent to continue such flights indefinitely." Persyn v. United States, 34 Fed. Cl. 187, 197 (1995) (citing A.J. Hodges Indus., Inc. v. United States, 174 Ct. Cl. 259, 265-66, 355 F.2d 592, 596 (1966)), aff'd 106 F.3d 424 (Fed. Cir. 1996) (unpublished table decision); see also Branning, 228 Ct. Cl. at 261, 654 F.2d at 101 (reprinting the trial judge's report as modified (stating that the "clear implication in Lacey was that . . . plaintiffs would have prevailed if 'appreciably noisier aircraft' were introduced for the first time within the 6-year [statute of limitations] period" (emphasis added))).

      3.     Who Is Entitled to Compensation

It is "[t]he owner at the time [of the taking] rather than the owner at an earlier or later date . . . who has the [takings] claim and is to receive payment." United States v. Dow, 357 U.S. 17, 22 (1958) (internal quotation marks omitted); accord Palazzolo v. Rhode Island, 533 U.S. 606, 628 (2001) (stating that in an inverse condemnation case, "any award goes to the owner at the time of the taking, and . . . the right to compensation is not passed to a subsequent purchaser"); Argent, 124 F.3d at 1287. A subsequent owner "who did not own [an] interest[] in the subject property on the date of the alleged taking . . . fail[s] to state [a] claim[] upon which relief can be granted." Creppel v. United States, 33 Fed. Cl. 590, 600 (1995); accord Banks v. United States (Banks II), 88 Fed. Cl. 665, 674 (2009) ("It is well established that owners who acquired their property interests subsequent to the time of the taking are not entitled to compensation from the government.").

III.    Discussion

    A.    The Court's Jurisdiction Over Plaintiff's Claim

Plaintiff states that the court has jurisdiction over her inverse condemnation claim pursuant to the Tucker Act. See Compl. ¶ III. Under the Tucker Act, the court generally

has subject matter jurisdiction over takings claims founded upon the Fifth Amendment, which is treated as a money-mandating provision.  See Moden, 404 F.3d at 1341. Nevertheless, such a claim may be barred if the claim is not filed within six years of the date on which the claim first accrues.  See 28 U.S.C. § 2501; see also John R. Sand & Gravel Co., 552 U.S. at 134-35 (noting the "absolute nature" of the "jurisdictional" limitations statute applicable to this court).

Here, plaintiff filed her Complaint on May 18, 2012.  See generally Compl. (showing "received and filed" date of May 18, 2012).  Therefore, to the extent that plaintiff's claim arose on and/or after May 18, 2006, such a claim would be within the statute of limitations.  See 28 U.S.C. § 2501.  Plaintiff alleges that her "use and enjoyment of the Property was destroyed or substantially interfered with on and after May 23, 2006"--within the limitations period--"by the operation of [Super Hornets] . . . over and around the Property."  Compl. ¶ 2.  Plaintiff states that, although she "alleges that her claim accrued the same day she purchased the property, she does not allege that the purchase is what gives rise to her claim."  Pl.'s Resp. 3.  To the extent that the events alleged by plaintiff as constituting a taking occurred on and/or after May 18, 2006, the court would have jurisdiction over plaintiff's claim.  Cf. Ingrum, 560 F.3d at 1314 (stating that a takings claim "accrues when the act that constitutes the taking occurs").

   B. Plaintiff Fails to State a Claim Upon Which Relief Can Be Granted

Defendant argues that plaintiff's Complaint must be dismissed pursuant to RCFC 12(b)(6) for two reasons:  (1) because "Plaintiff fails to allege any government conduct that could have caused an overflight takings claim to accrue on or after the date on which Plaintiff alleges her claim accrued"; and (2) because "Plaintiff's Complaint contains no plausible allegations that . . . flights by [Super Hornets] over and around the Subject Property have been sufficiently frequent to give rise to a Fifth Amendment taking."  Def.'s Mot. 5, 7; see also id. at 1.  Plaintiff responds that the Complaint "does allege specific physical interference with her property by overflights on and after May 23, 2006," and that she "does not have to make the specific allegation that overflights are 'frequent' to have a valid takings claim."  Pl.'s Resp. 3 (some emphasis omitted).

To survive defendant's Motion, plaintiff's Complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Iqbal, 556 U.S. at 678 (internal quotation marks omitted).  In particular, to state an inverse condemnation claim, plaintiff must show that treatment under takings law is appropriate and that she possessed a "protectable property interest" in the subject property.  Ridge Line, 346 F.3d at 1355.

    1. Plaintiff Has Failed to State a Claim for Taking of an Avigation Easement

Treatment under takings law is appropriate--and a plaintiff has stated a claim for an avigation easement--when the facts alleged by plaintiff and accepted as true, see

9

Sommers Oil, 241 F.3d at 1378, show that "[f]lights over private land . . . are so low and so frequent as to be a direct and immediate interference with the enjoyment and use of the land," Causby, 328 U.S. at 266.  In determining whether plaintiff has met this standard, the court considers, based on the facts alleged by plaintiff:  (1) whether the planes flew directly over plaintiff's land; (2) the altitude and frequency of the flights; and (3) whether the flights directly and immediately interfered with plaintiff's enjoyment and use of the land.  See Brown, 73 F.3d at 1102.  Although detailed factual allegations are not necessary, plaintiff must state a basis for her "entitlement to relief" that goes beyond "labels and conclusions"; "a formulaic recitation of the elements of a cause of action will not do."  Twombly, 550 U.S. at 555 (internal brackets and quotation marks omitted).  The court is free to reject plaintiff's "legal conclusion[s] couched as . . . factual allegation[s]." Papasan, 478 U.S. at 286; see Twombly, 550 U.S. at 555.

Defendant argues that plaintiff's "allegations . . . amount to nothing more than formulaic recitations of the elements of a cause of action and are insufficient to state a claim."  Def.'s Reply 3.  Plaintiff maintains that she has "allege[d] specific physical interference with her property by overflights on and after May 23, 2006."  Pl.'s Resp. 3. In support of this position, plaintiff quotes two allegations from the Complaint:

> 'Plaintiff's use and enjoyment of the Property was destroyed or substantially interfered with on and after May 23, 2006 by the operation of [Super Hornets] . . . over and around the Property.'
>
> . . .
>
> '[T]he [Super Hornet] produces significantly higher levels of noise and vibration than the principal aircraft it replaced, the F-14' and . . . 'the noise from the flights of the [Super Hornets] directly over and in close proximity to the Property has substantially interfered with Plaintiff's use and enjoyment of the Property and has diminished the market value of the Property.'

Id. (quoting Compl. ¶¶ 2, 18-19 (brackets omitted)).

Defendant is correct that "[p]laintiff's 'conclusions' provide no factual basis for investigation."  See Def.'s Mot. 3.  The language of plaintiff's allegations tracks the elements of the cause of action without providing any factual support for plaintiff's conclusions.  Compare Pl.'s Resp. 3 (stating that the operation of Super Hornets over and around plaintiff's property "destroyed or substantially interfered with" plaintiff's "use and enjoyment of the Property" and that "noise from the flights . . . over and in close proximity to the Property has substantially interfered with Plaintiff's use and enjoyment of the Property and diminished . . . [its] market value") (quoting Compl. ¶¶ 2, 18-19), with Causby, 328 U.S. at 266 (stating that a cause of action for an avigation easement

exists when "[f]lights over private land . . . are so low and so frequent as to be a direct and immediate interference with the enjoyment and use of the land").

Indeed, in applying the Brown factors to plaintiff's allegations, the conclusory nature of plaintiff's allegations becomes more apparent. The Brown factors are: (1) whether the planes flew directly over plaintiff's land; (2) the altitude and frequency of the flights; and (3) whether the flights directly and immediately interfered with the plaintiff's enjoyment and use of the land. See Brown, 73 F.3d at 1102.

With respect to the first factor, plaintiff may state a cause of action for taking of an avigation easement, although not all flights complained of are directly over plaintiff's land, if plaintiff alleges a "peculiarly burdensome pattern of activity . . . that significantly impairs [her] use and enjoyment of [her] land." Argent, 124 F.3d at 1284. In Argent, the Federal Circuit found a "peculiarly burdensome pattern of activity" based on the plaintiffs' allegations that groups of Navy planes made training passes over plaintiffs' property and adjacent property--an average of fifty times per day at low altitudes--en route to a nearby landing strip, and that such passes created "'constant' noise and vibrations" and "caus[ed] great disturbance on the [plaintiffs'] property." Id. at 1283. Here, plaintiff concedes that not all flights are directly over her land, see, e.g., Compl. ¶ 17 (stating that Super Hornet flight paths "are over and in close proximity to the Property"), but fails to allege any facts sufficient to show a "peculiarly burdensome pattern of activity," cf. Argent, 124 F.3d at 1284. Instead, plaintiff relies on the conclusory assertions that noise and vibrations from the flights substantially interfere with her use and enjoyment of the Property and lower its market value without supporting these conclusions with any facts. See Pl.'s Resp. 3 (citing Compl. ¶¶ 2, 18-19); cf. Argent, 124 F.3d at 1283 (describing facts that constituted a "peculiar burden imposed on landowners" by Navy aircraft training).

Similarly, with respect to the second factor, plaintiff says nothing about either the altitude or frequency of the flights except to contend that "[s]he has successfully stated a claim because she has alleged the flights are at least frequent enough to cause . . . destruction of her property rights." See Pl.'s Resp. 4.

Finally, with respect to the third factor, plaintiff alleges that noise and vibrations from the flights substantially interfere with her use and enjoyment of the Property and lower its market value, but she offers no facts to support these conclusions. See Pl.'s Resp. 3 (citing Compl. ¶¶ 2, 18-19); cf. Griggs, 369 U.S. at 87-90 (finding a taking when "regular and almost continuous daily flights . . . directly over and very, very close to [the] plaintiff's residence" made conversations and sleep in the residence difficult, rattled windows, caused plaster to fall from walls and ceilings, and negatively impacted residents' health).

Plaintiff's allegations that noise and vibrations from Super Hornet overflights have substantially interfered with the use and enjoyment of the Property amount to legal

11

conclusions couched as factual allegations. Cf. Papasan, 478 U.S. at 286. Moreover, plaintiff has not alleged any facts from which the court could conclude that plaintiff's property value has been lowered since plaintiff purchased the property in May 2006. Plaintiff has failed to state a basis for her "entitlement to relief" that goes beyond "labels and conclusions." Twombly, 550 U.S. at 555 (internal brackets and quotation marks omitted). Because plaintiff's Complaint does not "contain sufficient factual matter . . . to state a claim to relief that is plausible on its face," see Iqbal, 556 U.S. at 678 (internal quotation marks omitted), dismissal of the Complaint pursuant to RCFC 12(b)(6) is proper.

>     2.     To the Extent That Plaintiff's Complaint Can Be Read to Allege a Taking Prior to May 23, 2006, Plaintiff Did Not Have a Protectable Property Interest That Could Be Taken

Defendant states that, "if the claim about which Plaintiff complains accrued on May 22, 2006 or earlier, Plaintiff would be unable to state a claim because she would not have been the owner of the Subject Property on the date of the alleged taking." Def.'s Mot. 8 n.3; see Compl. ¶ 1 (stating that plaintiff acquired the Property on May 23, 2006). The Complaint describes a record of decision in 2003, which announced the deployment of Super Hornets to Oceana. See Compl. ¶ 15. The Complaint also states that deployment of Super Hornets took place over the period from late 2003 until 2009. Id. ¶ 16. To the extent that the Complaint can be construed as alleging a taking by any of these events, plaintiff has failed to state a claim on which relief can be granted because plaintiff did not have a protectable property interest at the time when such a claim must have accrued. Cf. Ridge Line, 346 F.3d at 1355 (requiring that to state an inverse condemnation claim, plaintiff must show that treatment under takings law is appropriate and that she possessed a "protectable property interest" in the subject property). But see Compl. ¶ IV (stating that plaintiff's claim arose on May 23, 2006).

"The [physical] taking of an avigation easement by the Government occurs when the Government begins to operate aircraft regularly and frequently over a parcel of land at low altitudes, with the intention of continuing such flights indefinitely." Argent, 124 F.3d at 1285 (internal quotation marks omitted). A separate cause of action with its own limitations period may accrue if the number of flights is increased or louder aircraft is introduced so as to "sufficiently increase[] the scope" of the original easement. Id. at 1285-86; see Branning, 228 Ct. Cl. at 259, 654 F.2d at 100 (reprinting the trial judge's report as modified (stating that "an increase in noise alone, without any change in the nature of the physical invasion, has been held to constitute a further taking")). The question of when such a separate cause of action accrues "is a factual matter that depends on . . . when [an] alleged increase in flights [or] noise occurred." Argent, 124 F.3d at 1287.

Here, plaintiff alleges that the louder Super Hornets began replacing F/A-18 C/D and F-14 fighter jets at Oceana in 2003. See Compl. ¶¶ 16, 18. Therefore, to the extent

12

that the Complaint could be construed to allege a cause of action based on this increase in the scope of the easement over the Property, such a cause of action would have accrued in 2003, before plaintiff owned the Property. Cf. Argent, 124 F.3d at 1287. Only the owner at the time of a taking is entitled to compensation for the taking. Palazzolo, 533 U.S. at 628; Dow, 357 U.S. at 22; Argent, 124 F.3d at 1287. Therefore, not only would such a claim be barred by the court's six-year statute of limitations, see 28 U.S.C. § 2501, plaintiff, as a subsequent owner, would fail to state a claim upon which relief can be granted, cf. Banks II, 88 Fed. Cl. at 674; Creppel, 33 Fed. Cl. at 600.

To the extent that the court could construe the Complaint as alleging a gradual increase in noise between 2003, when Super Hornets were first deployed to Oceana, and 2009, when such deployment was complete, such a claim would accrue when the increase in noise "stabilized," meaning at the time "when it [became] clear that the gradual process set into motion by the government [had] effected a permanent taking, not when the process [had] ceased or when the entire extent of the damage [was] determined." Boling, 220 F.3d at 1370-71. In the context of an alleged gradual taking of an avigation easement, "[t]he overwhelming weight of authority holds that . . . the extent of the invasion and the degree of interference is ascertainable when the United States begins to operate its aircraft at low elevations and with such frequency that they substantially interfere with the use and enjoyment of the land, with the intent to continue such flights indefinitely." Persyn, 34 Fed. Cl. at 197 (emphasis in original); see also Branning, 228 Ct. Cl. at 261, 654 F.2d at 101 (reprinting the trial judge's report as modified (stating that the "clear implication in Lacey was that . . . plaintiffs would have prevailed if 'appreciably noisier aircraft' were introduced for the first time within the 6-year [statute of limitations] period" (emphasis added))).

Here, the United States began to deploy Super Hornets to Oceana in 2003, and the 2003 record of decision indicated the scope of the intended completed deployment. Compl. ¶¶ 15-16. The extent of the invasion and degree of interference--and the intent to continue such flights indefinitely--was therefore ascertainable in 2003, when the Navy issued the record of decision and began deploying Super Hornets to Oceana. Cf. Persyn, 34 Fed. Cl. at 197. Therefore, to the extent that the Complaint can be construed to allege that a gradual taking of an avigation easement occurred beginning on May 23, 2006, such a conclusion is incorrect. And to the extent that the Complaint can be construed to allege that a gradual taking of an avigation easement occurred sooner, such a claim would have accrued in 2003. Cf. Persyn, 34 Fed. Cl. at 197. Such a claim would be barred by the court's six-year statute of limitations, see 28 U.S.C. § 2501, and, because plaintiff did not own the Property at the time such a claim would have accrued, plaintiff would fail to state a claim upon which relief can be granted, cf. Banks II, 88 Fed. Cl. at 674; Creppel, 33 Fed. Cl. at 600.

IV.     Conclusion

For the foregoing reasons, plaintiff has failed to state a claim upon which relief can be granted. Accordingly, defendant's Motion is GRANTED, and plaintiff's Complaint is DISMISSED.

IT IS SO ORDERED.

s/ Emily C. Hewitt
EMILY C. HEWITT
Chief Judge
